# Law Offices of Colin Mulholland

Employment and Civil Litigation

36-36 33rd Street
Suite 308
Astoria, NY 11106

Telephone: (347) 687-2019
cmulhollandesq@gmail.com

November 10, 2025

**VIA ECF**
Honorable Seth D. Eichenholtz
United States District Court
225 Cadman Plaza E
Brooklyn, NY 11201

Re: 24-cv-05694-Ramos Angulo et al v. New Fast Expert Management Corp. et al

Your Honor:

I represent Plaintiffs in the above-referenced matter. I write to respectfully request that the Court approve the parties' settlement agreement as a fair and reasonable resolution of a bona fide dispute in accordance with, *inter alia*, the Fair Labor Standards Act. And, moreover, to hold that Defendant SYED ATIF NAQVI A/K/A SYED ATIF ABBAS, SHAWN ZAIDI is bound under the settlement agreement despite not formally executing the agreement, as further explained below.

The parties have agreed to a negotiated Settlement Agreement (the "Agreement") – **Exhibit A**. The proposed Agreement is attached hereto as **Exhibit A.** The parties therefore ask the Court to approve the settlement pursuant to *Cheeks v. Freeport Pancake House*, Inc., F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016).

The parties represent to the Court that while Plaintiffs believes that the settlement amount is less than what the Plaintiffs would be entitled to if Plaintiffs prevailed on all of their claims at trial, the settlement is fair, as discussed herein.

This agreement was reached after a lengthy mediation session through the Court annexed Mediation Program with Patrick McKenna, Esq. serving as the mediator.

## Settlement Judgment against Defendant SYED ATIF NAQVI A/K/A SYED ATIF ABBAS

All Defendants except for Defendant SYED ATIF NAQVI A/K/A SYED ATIF ABBAS and Defendant NAILA ANWAR executed the Settlement Agreement.

Sadly, Ms. Anwar passed away during the pendency of this action and the Defendant have provided a copy of her Death Certificate.

Defendant SYED ATIF NAQVI A/K/A SYED ATIF ABBAS has not executed the Settlement Agreement because Defendants' counsel has been unable to locate him.  In addition to moving for a finding of fairness, Plaintiffs would ask the Court to hold in its order of Approval that Defendant SYED ATIF NAQVI A/K/A SYED ATIF ABBAS is bound by the terms of this Agreement.

Defendants and Plaintiffs reached a complete settlement Agreement by email prior to drafting a long form Agreement which contained all of the material terms of the agreement. **See Exhibit B** – *Settlement E-mail.*

This Court has the power "to enforce summarily on motion, a settlement agreement reached in a case that was pending before it." Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974). The settlement stipulation is interpreted under New York law, whichprovides that a contract is binding and conclusive once entered. See Consol. Edison Co. of N.Y., Inc. v. Fyn Paint & Lacquer Co., 2008 U.S. Dist. LEXIS 25097, at *15 (E.D.N.Y. 2008).

Enforcement of settlement stipulations are "strongly favored by the courts and are not lightly cast aside." Delyanis v. Dyna-Empire, 465 F. Supp. 2d at 173 (E.D.N.Y. 2006). "Absent special circumstances, this Court has the responsibility to promote the efficient resolution of actions and the responsibility to enter and enforce the Settlement." Builders Bank v. Newland Group, 2013 U.S. Dist. LEXIS 13617, *16 (E.D.N.Y. 2013).

"It makes no difference that defense counsel, and not defendants, signed the email. Although "the decision to settle a case rests with the client" and the client "does not automatically bestow the authority to settle a case on retained counsel," the "unique nature of the attorney-client relationship" and the "public policy favoring settlements" allow courts to "presume[] that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." Kochan v. Schawbenbauer, No. 1:17-cv-452, 2020 U.S. Dist. LEXIS 251690, 2020 WL 8812836, at *4 (W.D.N.Y. March 10, 2020) (quoting another source)." **Suarez v. Gakk Rest. Inc**., 2021 U.S. Dist. LEXIS 171347, *7

"'[A} preliminary [settlement] agreement' is binding, despite the desire for a later formal document, 'when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation. Such an agreement is preliminary only in form - only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.' […] In particular, the parties' intent to record an agreement in the future does not prevent contract formation before execution" Delyanis v. Dyna-Empire, 465 F. Supp. 2d at 173 (E.D.N.Y. 2006) (*citing Teachers Ins. & Annuity Asso. v. Tribune Co*., 670 F. Supp. 491, 498 (S.D.N.Y. 1987)).

"The motion court properly determined that the handwritten memorandum executed following mediation between the parties was a binding and enforceable settlement agreement, and not merely an agreement to agree. […]  The agreement was not rendered ineffective simply because certain non-material terms were left for future negotiation, or because it stated that the parties would promptly execute formal settlement papers." Trolman v. Trolman, Glaser & Lichtman, PC, 2014 NY Slip Op 1396 - NY: Appellate Div., 1st Dept. 2014 (Internal citations omitted)

There are several recent cases in the EDNY and SDNY where courts have enforced signed and unsigned agreements after mediation within the FLSA context.  **See** Lewis v. New York City Transit Auth., 2015 U.S. Dist. LEXIS 84086 *3-14 (E.D.N.Y. 2015) (enforcing terms of signed term sheet after mediation that contemplated further memorialization in a final settlement agreement.);  Rivera v. The Crabby Shack, LLC, 17-cv-04738 (EDNY 2019) (Court enforced a signed term sheet even when parties failed to draft a formal written settlement agreement); Brum v. Paragon Design Corp., 2019 U.S. Dist. LEXIS 84802 (SDNY 2019) (Court enforces parties' settlement agreement that was announced on the record in open court notwithstanding lack of a formal written agreement); McNamara v. Tourneau, Inc., 464 F. Supp  2d 232, 239(S.D.N.Y. 2006) (holding stipulation of settlement was binding where the parties agreed on principal terms at mediation and "the context of the settlement discussions demonstrates that this was not a mere agreement to continue negotiations in good faith[,] … even though the parties never executed a formal contract.")

**See generally** Lerner v. NEWMARK & COMPANY REAL ESTATE, INC., 178 AD 3d 418 - NY: Appellate Div. (1st Dept. 2019) (Court enforcing agreement even though unsigned because the agreement reflected the meeting of minds).

Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved of its obligations under a settlement stipulation made during litigation. Consol. Edison., 2008 U.S. Dist. LEXIS 25097 at *16 (*citing Hallock v. State of New York,* 64 N.Y.2d 224, 230, (1984)). "As with any contractual agreement, a [party's] change of mind d oes not excuse her [or him] from performance of her [or his] obligations under the settlement agreement; even in a case where the district court must use its authority to direct the

final terms of that agreement." *Id.* at *18 (citing *Manning v. New York Univ.,* 299 F.3d 156, 164 (2d Cir. 2002))

## Background

Plaintiffs' principal allegations were as follows:

Plaintiffs were each employed as a warehouse worker and shipping clerks in the warehouses located at 182-8 149th Ave, Springfield Gardens, NY 11413 and 23039 *International Airport Center* Blvd. Springfield Gardens, NY 11413.

Plaintiff Alfonso Ramos Angulo worked from approximately April 2023 until on or about April 2024.

Plaintiff Weymar Potes was employed from approximately September 2023 until on or about June 2024.

Plaintiff Renny Jose Velasquez worked from approximately July 10, 2023 until on or about June 2024.

Plaintiff Ramon Antonio Abreu Velasquez worked for Defendants from on or about July 2023 until on or about July 2024

Plaintiff Michel Guebara was employed from February 2024 until June 2024.

Plaintiff Ammis Valera was employed from January 2024 until December 2024.

Plaintiff Oscar Palacio was employed from July 2023 until June 2024.

Plaintiff Jose Carmen Puerto was employed from May 2023 until July 2024.

Each of the men worked approximately 54 hours per week for a fixed day rate of $140.00 without a premium for their hours worked over 40.  Further, Defendants failed to provide the requisite statutory wage notices and wage statements.

The potential range of recovery for Plaintiffs depends ultimately on the hours worked, the terms of their employment and the manner in which to calculate damages that may or may not be endorsed by a trier of fact after trial, or by a judge if it is determined that the manner in which damages are to be calculated is a matter of law.

Plaintiffs alleges that they could have been entitled to upwards of $88,000.00 in unpaid wages and liquidated damages if a trier of fact had endorsed Plaintiffs' initial recollections of hours of compensable work.  **See** **Exhibit B** *Estimated Damages*.

Plaintiffs are fully aware that their claims would or could be worth more than the settlement.  After carefully explaining the options going forward and the risks of protracted litigation combined, Plaintiffs have chosen to accept $63,000.00to resolve all claims.

## Settlement

The parties have agreed to settle this action for the total sum of $63,000.00 which will be paid as outlined in **Exhibit A.**

The total costs of this action are $705.00  ( $405.00  filing fee and $300.00  mediation fee and $0.00  for service of process).

Plaintiffs will receive a pro rata portion of the settlement agreement based on their owed wages as per the attached damages chart.  **See Exhibit C** – Estimated Damages Chart.

| | |
|---|---|
| Alfonso Ramos Angulo | $5,152.30 |
| Weymar Potes | $4,404.38 |
| Ramon Antonio Abreu | $5,692.45 |
| Renny Jose Velazquez | $5,692.45 |
| | |
| Jose Puerto | $6,855.88 |
| Ammis A Valera Perez | $5,817.11 |
| Mitchel Guevara Angulo | $2,285.29 |
| Oscar Alexander Palacio | $5,650.90 |

The settlement fund represents a significant sum of money for Plaintiffs and reflects a fair compromise of their respective best-case scenario in light of the risks of proceeding to trial.

The remaining third of the settlement – $21,449.24 - will be applied as attorneys' fees and costs, subject to the Court's review and approval.

## Fairness

"In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Cheeks v. Freeport, (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiffs' range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic, 900 F.Supp.2d at 225 (quoting Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to Plaintiffs.  Plaintiffs have been represented by experienced counsel throughout this lawsuit and Plaintiffs have made an informed decision to settle the action at this stage of litigation without the risk of a contrary finding of fact at trial on either their hours worked or term of their employ.

Moreover, courts often recognize that settling a claim sooner rather than later is often valuable in its own right.  **See** Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an

immediate recovery outweighs the mere possibility of further relief after protracted and expensive

litigation.")

**Attorneys' Fees Are Fair and Reasonable**

Under the settlement, Plaintiffs' counsel will receive $21,449.24 from the settlement fund

as attorneys' fees and costs, subject to review and approval of the court. This represents one third

of the recovery and costs in this litigation in keeping with the Plaintiffs' agreement with counsel.

The undersigned has attached contemporaneous billing records along with this application

evidencing counsel's lodestar. **See** **Exhibit D** *Lodestar.*

With respect to fees, a court may calculate a reasonable attorneys' fee either by determining

the so-called 'lodestar' amount <u>or</u> by awarding a percentage of the settlement. **See** <u>McDaniel v.</u>

<u>Cty. of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010).

"However, 'the trend in this Circuit is toward the percentage method,' although it is for

district court to determine 'the appropriate method' in a particular case […] the percentage method

[…] avoids the lodestar method's potential to create a disincentive to early settlement." **See** <u>Hyun</u>

<u>v. Ippundo USA Holdings, et al.</u>, 14-cv-8706 (AJN), 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y.

Mar. 24, 2016) (internal citations omitted).

Courts in this district generally find 33.3% of a settlement allocated for attorneys' fees to

be reasonable when negotiated as part of a one-third contingency fee arrangement. **See** <u>Garcia v.</u>

<u>Pancho Villa's of Huntington Village, Inc.</u>, No. 09 CV 486, 2012 WL 5305694, at *8 (E.D.N.Y.

Oct. 4, 2012).

"[C]ourts in this Circuit have routinely found an award representing one third of the

settlement amount to be reasonable." <u>Oxley v. EXCELLENT HOME CARE SERVICES, LLC</u>,

18-cv-2374-RJD-CLP, Dist. Court, ED New York Jan. 8th 2020 (approving 1/3 percentage of the fund in FLSA matter)

"[A] one-third contingency fee is a commonly accepted fee in this Circuit." Calle v. Elite Specialty Coatings, Inc., No. 12 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit."); Rodriguez-Hernandez v. K Bread Co. Inc., No. 15 CV 6848, 2017 WL 2266874, at *7 (finding "30% of the total settlement [to be] a reasonable and appropriate attorney's fee award).

The undersigned here has such an arrangement with each Plaintiff for a 33.3% contingency fee net of costs. – a retainer agreement is considered "documentation to support" the 33.3% fee in this case. **See generally** Miller v. United Parcel Serv., Inc., No. 20-CV-05244n(JMW), 2023 WL 2214107, at *4 (E.D.N.Y. Feb. 24, 2023)("Following Fisher, courts in this district have independently found an attorney fee representing one-third the settlement amount reasonable, where the attorney provided documentation of the signed retainer agreement between the attorney and Plaintiffs.")

"We will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many courts do. See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5, 2022). We decline to perform a "lodestar cross check" because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the "lodestar" for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A "lodestar cross check" is of course

appropriate, and indeed required, where a court is being asked to award a percentage of a common fund in attorney's fees. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014). Here, however, there is no common fund created by the settlement. Instead, the Plaintiffs and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney's fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client."). Therefore, in cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under Cheeks whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected.

Instead, we must independently judge whether the percentage contingency arrangement is itself "reasonable." We believe such an analysis, however, must be conducted ex ante --- not in light of the actual number of hours expended after the contingency fee arrangement was made. Certainly, we would not find "reasonable" any contingency fee arrangement that was

itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339, 998 N.Y.S.2d 698, 23 N.E.3d 965 (N.Y. 2014) (contingency fee arrangement enforced in the absence of "incompetence, deception or overreaching" or if "void at the time of the inception"). It is certainly possible that a contingency fee arrangement in a particular case might be ex ante unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Here, however, there is no indication of any such overreaching           or         of          any           deceptive            conduct.

As to the amount of the contingent payment, we would have no compunction about disapproving a percentage amount that was outside of the range of what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or questionable. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." **Garcia v. Atlantico Bakery Corp.**, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016).

Thus, regardless of the number of hours actually spent by counsel on this case, the Court finds that the contingent fee arrangement was fair to plaintiffs and reasonable at the time it was made. Accordingly, the Court approves the attorney's fees and costs in the settlement agreement as they are consistent with the retainer agreement agreed to by Plaintiffs." **Almanzar v. Silver Star Properties Corp.**, No. 23 CIV. 819 (GWG), 2023 WL 6979460, at *2–3 (S.D.N.Y. Oct. 24, 2023)

To the extent this Court engages in a cross-check based on the lodestar, the undersigned respectfully asks for a multiplier.

"Assuming the multiplier here is somewhat higher than normally awarded, this Court nonetheless recognizes the importance of **encouraging the swift resolution of cases** like this one and **avoiding 'creat[ing] a disincentive to early settlement'**—particularly where such settlement has provided Plaintiffs with a **substantial and speedy result**." Pinzon v. Jony Food Corp., et al., No. 18-cv-105 (RA) S.D.N.Y. May 24th, 2018. (emphasis added) (Court approved a multiplier of 5.23 in a single Plaintiffs FLSA matter involving the undersigned); see also Johnson v. Brennan, No. 10-CV-4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed `common' by courts in this District.")

"Courts regularly award multipliers from two to six times the lodestar." Monserrate v. TEQUIPMENT, INC., 11-cv-6090 (RML) Dist. Court, EDNY, Nov. 16th, 2012 (collecting cases and applying a multiplier of 4.34)

"When applying the lodestar method, courts generally 'apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.'" Pucciarelli v. Lakeview Cars, Inc., Dist. Court, ED New York 2017 (quoting In Re Platinum & Palladium Commodities Litig., No. 10-CV-3617 (CCH), 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015).

Moreover, in Fish v. SD Prot. Inc., 948 F.3d 593 (2nd Cir. 2020), the Second Circuit held that the proportionality of an attorney fee award to the Plaintiffs' recovery should not be viewed by the district court as an "outcome determinative factor in evaluating the reasonableness" of the

fee and further emphasized the importance in incentivizing the plaintiffs' bar to take small and/or difficult cases.

Counsel would respectfully request that the Court consider a multiplier that takes these factors into account.

Reasonableness of Rates:

"Additionally, in an individual FLSA action (as opposed to a collective or class action) in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." Dominguez v. Architectural Sign Group, et al. 18-cv-5514 (KAM) (JO) October 17th, 2019.

The highest approved rate approved for the undersigned is $375.00 per hour which was explicitly approved by the Honorable Richard Sullivan in 2018. **See** Wilmer Calle et al. v. NDG Coffee Shop, Inc, et al., No. 16-cv-7702 (SDNY 2018).  The undersigned now respectfully submits a lodestar calculation applying that same rate to the case at bar. **See Exhibit C.**

And, this rate has also been explicitly been approved by Chief Magistrate Cheryl L. Pollak in 2022:

"Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 123057, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for

partners are within the reasonable range in the Eastern District of New York).” Cruz v. O & M
Pizza Corp., 2022 U.S. Dist. LEXIS 148240, *29-30, 2022 WL 3448661; see also Flores v.
Urciuoli, 2022 U.S. Dist. LEXIS 5637, *20, 2022 WL 987353

    In an effort to support the application of the above hourly rate, the undersigned also
respectfully submits the following brief biography:

    I am a solo practitioner who focuses on FLSA and employment claims in New York City.
I was admitted to practice in February of 2013. Prior to managing my own practice, I have been
litigating dozens upon dozens of FLSA claims and employment claims throughout the entirety of
my career. I have been lead counsel on over 40 cases in the Eastern District and over 100 cases in
the Southern District – almost all of those cases being FLSA cases that resulted in favorable
settlements for my clients.

    The undersigned has successfully conducted the trial of four (4) FLSA claims as sole trial
counsel in the Southern District.  Each of those trials resulted in a significant finding of liability in
favor of the plaintiffs.  These trials included two jury verdicts in favor of plaintiffs:

    i.    Wilmer Calle et al v. NDG Coffee Shop, Inc. yielded a jury verdict of over
$2.2 million dollars before the Honorable Richard J. Sullivan.

    ii.    Carrasco Flores et al v. NYC Pasta and Risotto Co. LLC. yielded a verdict
of over $195,000.00 before the Honorable Lorna G. Schofield.

    Plaintiffs’ counsel spent 28.8 hours litigating this case. **See Exhibit C** *Lodestar
Calculation*.  The total costs amount to $705.00 .  The undersigned would ask the Court to take
judicial notice of the $405.00 filing fee connected with opening this case. The invoices for
mediation fee and service of process are attached as well.

While whether or not the amount of proposed attorneys' fees exceeds the lodestar depends on the hourly rate this Court endorses for Plaintiffs' counsel; it is important to cite that the percentage method provides a <u>powerful incentive</u> to attorneys for plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation. <u>**See**</u> <u>Hyun v. Ippundo USA Holdings, et al.,</u> 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. Mar. 24, 2016) ("[T]he Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)).

Here, Plaintiffs was able to obtain a satisfactory outcome against experienced defense counsel. In addition, the fees requested are in accordance with Plaintiffs' retainer agreement with counsel.

The parties thank the Court for its review of this submission.

Respectfully Submitted,

<u>/s/ Colin Mulholland, Esq.</u>